STATE OF OREGON,
*Appellant,*

*v.*

DAVID DOWNING,
*Respondent.*

(No. 78-31225, CA 13086)

600 P2d 897

Charles D. Carlson, Certified Law Student, Eugene, argued the cause for appellant. With him on the brief were J. Pat Horton, District Attorney, and Greg Veralrud, Assistant District Attorney, Eugene.

Robert A. Smejkal, Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Tanzer, and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant was charged with driving under the influence of intoxicants. His pretrial motion to suppress the results of a breathalyzer examination was granted, and the state appeals. We reverse.

The facts leading up to administration of the breathalyzer test are not in dispute. On September 24, 1978, at approximately 1:40 a.m., defendant was arrested for driving under the influence of intoxicants. At the scene of the arrest the officer told defendant he would have an opportunity to take a breathalyzer test. Defendant asked what would happen if he refused. The officer responded that under the Implied Consent Law he would lose his license for 120 days. He then told defendant he would be better off taking the test, because if this was his first offense, he would be unlikely to lose his license if convicted.

After defendant and the officer arrived at the jail, the officer requested that defendant take a breathalyzer test. The defendant could not make up his mind whether to take the test, and expressed concern about losing his license. The officer then advised defendant of his rights under the Implied Consent Law and the consequences of a refusal to take a breath test. The advice given was complete and accurate. The defendant was still unable to make up his mind. The officer again told defendant that if he refused he would lose his license, but if he was convicted on the first offense, he would generally not lose his license. Defendant took the breathalyzer test.

At the hearing, defendant testified that his primary concern was the loss of his license for 120 days because it was essential that he be able to drive to work. When asked if he was misled by the officer's statements, he said he was not.

The court found that the advice respecting refusal to take the test was accurate and that the officer's statement that if defendant were convicted, and this

was his first offense, his license would not be suspended was correct. The court, however, ruled that under *State v. Freymuller*, 26 Or App 411, 552 P2d 867 (1976), "it's inappropriate for police officers to suggest what course of conduct an incarcerated person should take during the breathalyzer."

In *Freymuller* the defendant asked the arresting officer if he had to take the breathalyzer test. The officer replied: "[Y]es, you are required to do so by law." We held that because the officer had not given the defendant complete or accurate information respecting his rights under the Implied Consent Law, the defendant had been misled into submitting to the test.

In *State v. Baxter*, 34 Or App 963, 580 P2d 203 (1978), we interpreted our holding in *Freymuller* and said '[t]he only requirement imposed by our decision in *Freymuller* is that the arrestee not be misled or tricked into thinking he has no right to refuse the test." 34 Or App at 966.

In this case defendant was given complete and accurate information respecting his rights and the consequences of any decision he made. The defendant was having difficulty making up his mind. His primary concern was the loss of his operator's license. The officer's statement, in that context, that it would be better for him to take the test because if convicted he would not lose his license, was not inaccurate or misleading. Based on all the information the defendant made a choice. There is no basis for a conclusion that he was tricked or misled into taking the breathalyzer test.

Reversed and remanded for trial.